The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. All right. Good morning, counsel. We're on the record in case number 4-22-0689, People v. Eric Cutler. At this point, I'm going to ask for appearances. Counsel for the appellant, could you please state your appearance? Joshua Scanlon for Eric Cutler. And counsel for the appellee, could you please state your appearance? Connor Gettin for the state, Your Honor. All right. Thank you both. Mr. Scanlon, you may proceed with your argument. Thank you, Your Honor. May it please the court, counsel. My name is Joshua Scanlon, and I am here today representing Eric Cutler in his appeal and requesting that this court reverse the order denying his motion to withdraw his plea or alternatively remand for further proceedings in compliance with Rule 604D. Mr. Cutler did not want to plead guilty in this case. In 2017, when he was arrested and charged in the present case, he had no criminal history and no experience of any kind dealing with the legal system. Throughout the two years that his case was pending in the trial court, Mr. Cutler relied entirely on the advice of his appointed attorney. So in May of 2019, when his attorney received numerous discovery items in the week before the scheduled trial date, and she told him that she needed a continuance in order to be prepared for trial, he reasonably believed that such a continuance was necessary in order for him to receive a fair trial. And when that continuance was denied to the surprise of both him and his attorney, he was confronted with an expiring plea offer, and he again relied on her advice that the sentence he was likely facing was 20 years. In that moment, reasonably believing that his attorney would not be prepared for the trial scheduled in three days, and that pleading guilty would likely result in a sentence of 20 years, he pled guilty. Mr. Scanlon, may I ask, the judge made very clear at sentencing and your client indicated a recognition that he could be sentenced to somewhere between 20 and 60 years. So does that not make it difficult to find any connection to the argument or to the advice he received from his attorney? No, Your Honor. I believe that the issue there is the prejudice, whether or not the court's admonishments cured any prejudice from counsel's advice to him. And that's exactly my question. How is somebody saying you're going to get 20 years not exactly overwritten by the judge saying you can get between 20 and 60? In this case, largely based on the circumstances, it is not overwritten because Mr. Cutler was relying so heavily on the advice of his counsel, and that his counsel's advice didn't necessarily directly conflict with the idea that there was this range from 20 to 60 years, but that what he would realistically receive was going to be 20 years or at least something on the low end of that range. Counsel's appropriate advice from counsel would have been not that what he's really going to receive is 20 years, but that whatever she thought might be more likely, that the sentence of 60 years was still possible. And Mr. Cutler's testimony post remand was clearly that he did not his attorney. So where it conflicted with the judge's admonitions, and he was reasonably relying on that, particularly based on his own inexperience with the legal system, then it was his counsel's bad advice that ultimately pushed him in the direction of the plea. More importantly, with regard to counsel's deficient advice, it was very clear that all attorneys in this case treated this plea as an open plea, as opposed to the legally negotiated or partially negotiated plea that it actually was. And so Mr. Cutler, in agreeing to the plea and was unaware and could not possibly have been aware that he was accepting any sentence up to 60 years without challenge in the future. Well, Mr. Scanlon, you talked about how your client had no experience with the criminal justice system. So why would calling it an open plea versus something else mean anything? Why would that jargon mean anything to him? The fact is that it was explained to him at sentencing exactly what it meant, meaning that he could be sentenced to between 20 and 60 years on each offense. Your Honor, that range was given to him. That is correct. But nobody ever explained that he wouldn't be able to fight that sentence, that he would be barred into eternity from arguing that that sentence was excessive or in any other way unjust. He had no knowledge of that at the time of the plea. There is no way that he could have, where the entire courtroom believed apparently that he still maintained the ability to challenge that sentence in the future without knowledge. Counsel, excuse me. Yes, Your Honor. Prior to the plea or at the time of the plea, is there anywhere in the record that indicates the defendant's appeal rights were key to his decision to accept the plea? No, Your Honor. The appeal rights were not discussed prior to the plea. But the prejudice of that doesn't turn purely on whether or not that was the key decision. Certainly, it would be prejudicial if that were the key decision that he would be able to appeal. But the prejudice in this case turns on whether or not it would have been rational, absent the bad advice or with the appropriate advice, for him to proceed to trial. Had he known at the time of his plea of this very direct and automatic consequence of accepting the plea, then it would have been rational for him to refuse that and proceed to trial, particularly where, if he were properly understood, that he could receive that sentence of up to 60 years, where there was not a substantial difference in the penalty he could ultimately receive following finding of guilt after trial. Mr. Scanlon, I'm not sure that I remember exactly the sequence of events in reading through the transcript of that ultimately ended up pleading guilty. But as I recall, the trial court inquired directly of your client at the request of defense counsel, Ms. Evans, as to whether or not he was accepting or rejecting the plea offer of a 60-year cap on any of the murder charges. And he indicated, you know, finally, after several questions by the judge on that point, that he was accepting the offer. And the judge allowed for your client to talk with Ms. Evans at that point. Do we know what they talked about, other than through what your client set forth? And frankly, I'm not even sure that he did set forth anything about that conversation in his affidavit. I can't remember that. But do we know what they talked about in that particular conversation? We do not know specifically in that conversation what they discussed. According to Mr. Cutler's testimony post remand, it was on the day of the plea that counsel first advised him regarding the offer and essentially advised him to plead guilty because she could not be prepared for trial and that she believed he would receive a sentence of 20 years or at least a sentence on the low end of that 20 to 60-year sentencing range. And that that was the admonishment that he received that day. He did not specify whether it was during that specific aside, that specific recess that she provided him that advice, though I think it would be reasonable to presume that that was what was a time at which he could have provided that advice or if it was immediately before that plea hearing that she provided that advice. But we do not have a specific testimony regarding that instance exactly. However, we do have Mr. Cutler's testimony unrebutted by the record that that was her advice, that he pleaded guilty where she could not be prepared for trial without the continuance that he believed that she believed was necessary. Counsel, you suggested that there was only on that day that the 60-year cap was known to him. Wasn't that an offer that was on the table for some time? That offer was first provided to Mr. Cutler at the April 23rd status hearing. Mr. Cutler was made aware of that beforehand as counsel made clear that she hadn't discussed it with him at that date and he wasn't going to have be able to make a decision on that date. That was the only reason that the court urged the state to provide some additional time to consider that. However, counsel then failed to discuss that offer or advise Mr. Cutler about that offer in the interim between that April 3rd status date and the May 10th hearing at which he ultimately entered the plea. So she only provided the advice as testified to by Mr. Cutler post remand on the day that he ultimately entered the plea. And so any understanding that he had about that plea, about what that cap of 60 years meant, because again, he had no experience with the legal system, all had to have come from counsel's advice to him on the day he entered the plea. But he had been aware of the sentencing range, correct? He had, the 60 year sentencing range had been at his initial arraignment, what he received for, I believe, three of the counts. And on the fourth count, it was up to natural life on that fourth count, correct? Yes, your honor. At the arraignment is how they advised him. Yes, your honor, that's when was the first time that anyone, and that could be the trial judge himself, or the attorneys identified this correctly as a partially negotiated plea as opposed to an open plea. I'm sorry, remand? Yes, your honor. Yes, I believe it was on remand that it was first they first became aware of that. Is it safe to assume that at no point during Ms. Evans' consultations with your client that he was ever advised that he would be foregoing any challenge to the trial court sentence by pleading in the manner he did? Yes, your honor, I believe that's accurate, that he was never made aware that by making that plea, he would be foregoing any ability to challenge his sentence in the future. And ultimately, had he been advised of that and fully understood that he was facing truly a sentence up to 60 years, it would have been rational for him to proceed to trial. He did not plan to plead guilty on that day, and he almost immediately sought to withdraw that plea, so it was clearly not his first choice. Moreover, the consequences of a sentence following a finding of guilt at trial were not substantially worse than the sentence he received as a result of the plea, where there was a life expectancy in the mid-60s for a person in incarceration. 60 years or 100 years still, in Mr. Cutler's own words, would be a walking death sentence. So just looking back at it, trying to just evaluate it in retrospect, as he's sitting there at the time just prior to taking the plea, objectively, what can we say that the benefits would have been for taking the plea versus going to trial? By taking the plea, he takes off the table any potential sentence over 60 years. That's the cap that was part of the plea agreement. Was there any other potential benefit to him at that point by pleading guilty? As I say that, there's one more that would be potentially by pleading guilty that would be viewed from a positive standpoint by the trial court during sentencing. Anything else? No, Your Honor. That is exactly the only other possible benefit that he could have received, was that by pleading guilty, it might be considered mitigating at sentencing. Indeed, the only real benefit sought by most plea agreements generally is that the sentence would somehow be reduced or mitigated by making the plea of guilty. In this instance, there was no other benefit to him. What about the benefits of going to trial then? Had he been allowed to go to trial, he would have been able to contest his guilt. And in of defense, in terms of whether or not Vanity Johnson was the other person who was potentially culpable for the death of MC in this case. And there was evidence to suggest that she had talked about turning herself in, that she had vehemently opposed the idea that he was guilty, and that she had some mental health issues that might have been brought in. Now, whether or not or the extent of this evidence that might have been presented at trial is certainly an open question. But regardless, he believed himself to have a viable line of defense at trial to contest his guilt. Let's say that when Ms. Evans is advising him, she says, you know, you can take it to trial, chances of not guilty or not very good. What other potential benefits are there for him having gone to trial, if that was to be his choice? Had he gone to trial and still been found guilty, Your Honor, then he would have at least been able to provide further mitigating circumstances for at sentencing. He on the advice of counsel in this case specifically did not provide information during the pre-sentence investigation. He didn't present any additional mitigating evidence beyond the, I believe it was the testimony of his aunt. And there was the potential for him to cooperate and provide further mitigation in that pre-sentence investigation and request a more lenient sentence on the basis of any additional mitigation, including any mitigation related to any variance in the culpability between him and Ms. Johnson with regard to MC's death. We also don't know what evidence would have been presented at trial that might have mitigated the severity of the offense ultimately. There are a number of ways in which that would have been an advantage to him had he gone to trial and not been under the yoke of counsel's advice not to contribute to the pre-sentence investigation and therefore suggest the possibility of a mitigated sentence once he reached sentencing. The state says at page 15 of its brief that the defendant is not without recourse that he can pursue this via post-conviction. If we decide this issue in regards to ineffective assistance, specifically as to the misnomer referring to this as an open plea, is any post-conviction claim regarding ineffective assistance going to be subject to a claim of by finding that he can withdraw his plea now? No, I'm sorry. The opposite. If we find against your client on that issue in this direct appeal, the state says that he's still not without recourse that he can pursue this via post-conviction petition. Is there a problem for him at that point that this is res judicata? I think, your honor, that would depend on your decision. I think if you decided that there was not sufficient information in the record to determine if plea counsel was ineffective, then I do not think it would be subject to res judicata. If for there were another reason that decided that this were not ineffective assistance of counsel, then yes, I think there is a possibility of res judicata. I think that would be dependent on your decision. I apologize. I think I saw that my time is low at this point. Let me just ask for clarification from the bailiff. How much time is one minute? Thank you. Thank you, your honor. So your honor, I do believe that if the issue is that we do not have sufficient information in the record to determine that counsel was ineffective, then no, I do not believe it would face a res judicata problem. However, I do believe that there is sufficient information in the record to clearly determine that counsel did not understand that Mr. Cutler could not challenge, would not be allowed to challenge his sentence in the future. So Mr. Cutler clearly could not have been advised of the fact that by agreeing to this plea, he was giving up that ultimate challenge. By doing so, it barred him from ever challenging his sentence and ultimately barred him from seeking the trial that he clearly wished to seek. Because of counsel's actions and ultimately the coercive actions caused by the state and counsel, Mr. Cutler entered a plea he never wanted to enter and without full knowledge of what that would mean for him in the future. What's the difference between the state taking a position on continuance or on a plea recommendation and coercion? You may answer. If I may answer. Um, I'm sorry, your honor, if you could restate. Yeah, what's the, I mean, obviously the states, states object to continuances. Um, the state will make an offer on a, on a plea that may not be what the defense wants. What makes this go into the realm of coercion? Here it is the confluence of the state's actions between April 23rd and May 10th and counsel's advice, excuse me, that she could not be prepared for trial between the fact that the state essentially created a plea offer with an immediately expiring date and then extended it. And then again, reasserted immediately after its objection was upheld that this, this plea offer is expiring. I would like you to please inquire whether you'll accept that plea in confluence with counsel's advice that she could not possibly be prepared for trial without that continuance. It created that such a course of influence that Mr. Cutler ultimately entered a plea. He did not wish to. So on that basis, I thank you, your honors and ask that you overturn the trial court's denial. All right, Mr. Scanlon, you'll have time and rebuttal. Mr. Gavin, your argument, please. May it please the court. Counsel, my name is Connor Gavin. I represent the state in this matter. Defendant argues that he should have been allowed to withdraw his plea on three grounds. First, because counsel told him he would be receiving a 20-year sentence in this case, a case where he admitted that he, quote, whooped his two-month-old baby to death. Second, that counsel failed to advise defendant of the collateral consequence that he would be and third, that he was coerced into his plea. Regarding the first issue about the advice concerning the length of this plea, defendant has to show objective proof when seen to withdraw a plea that when he's under a mistaken impression, that that mistaken impression is reasonably justified. Defendant's mistaken impression in this case, that he would get a sentence of 20 years or a low end of the spectrum, was not objectively reasonable. Defendant was advised from the outset that he was facing a sentence of anywhere from 20 years to natural life in prison, 20 to 60 years on the first three counts. Then we get to this April 23rd hearing, where the state puts on the record for the first time it's offered to defendant that he could have a 60-year cap and they clarify that he's facing 20 to 100 years on all four of the counts. Sorry, if I may backtrack, previous to that decision or previous to that hearing, I'm sorry, the state had been emailing with defense counsel about the claim. So, it had been known for a little bit longer than April 23rd. After that point, at this April 23rd hearing, the decision was set to, or the plea bargain, I'm sorry, was set to expire at the end of the hearing. But the state agreed to extend the time frame of the plea bargain to May the 10th in order to give defendant more time to consider this offer. At the May 10th hearing, defendant, or the state once again, explained the offer to defendant, explained the range of time he was facing, 20 to 100 years. And then at the end of the hearing, just told defendant that his plea was expiring. Defendant accepted the plea offer. And then at that point, defense counsel said that she hadn't had an opportunity to go over the plea admonishments with defendant. She took the time to do so. There was a recess. And then defendant came back from that recess and the court took the time to make sure, once again, that the offer was restated to defendant, that he knew he was facing a range of 20 to 100 years, and that he knew the state's cap was 60 years. It seems hard to believe that, given all this, that defendant could reasonably believe that he was going to get a sentence of 20 years. That would mean that his counsel, presumably, would have had to, during the recess, after already being made aware repeatedly on April 23rd, on May 10th, before the recess, would have told him that he was going to get a sentence on the lower end of the spectrum, or that he was going to face a 20-year sentence. Do you disagree that the only time his attorney spoke to him about the offer was at 20-minute that two-week period? So that means that, logically, it would be likely that that was the period of time where this advice would have occurred. At that same time, talking about the hearing at which the plea was taken, I was asking Mr. Scanlon about what the pros and cons would have been at that time for defendant to take the plea versus rejecting the plea and going to trial. Here, in your brief, you very clearly set forth your argument that there was no real likelihood of him succeeding in obtaining a not-guilty verdict had he gone to trial, correct? I believe so, yes, Your Honor. Okay. So let's just say you're right, that there was very little likelihood that he would get a not-guilty verdict, and that for him, he's then contemplating two different scenarios. One is that he takes the plea and caps the sentence at 60 years, or he rejects the plea, goes to trial, loses, and then has a potential sentence of up to 100 years. Is that right? Correct. I apologize. The judge even remarked during sentencing that he was surprised that 60 years was the max he could get, which to me suggests that had it gone to trial, that he would not get something less than 60 years. He would probably get 100 years given the heinous nature of this crime. Well, and potentially so, but we do know that he didn't participate in large part in the preparation of the PSI. He didn't testify. He didn't make a statement in allocution. There's a fair amount that we don't know because of counsel's advice at that point. But just going back to that hearing at which he accepted the plea, it would seem a reasonable argument could be made that his calculus there is what's going to give me the best chance of getting a lower sentence. A 60-year sentence is going to be a life sentence for me. Anything above 60 years is going to be a life sentence for me. How do I get a sentence at the lower end? It would seem that if he doesn't have really any shot at getting a not guilty, then he should have been conserving his ability to try to get a better sentence at that lower end. If he knew at that point that by accepting this partially negotiated plea that he was giving up any right to challenge his sentence, it would seem that maybe that more so in this case than in other cases would have been significant. What do you say to that? I would just say that first of all, by taking this plea, and I apologize if I'm not answering your question exactly correctly, that by taking this plea, he preserved the possibility that he could get out of prison, whereas potentially, like if he gets 60 years, he's in his 80s and he could possibly get out of prison. That has some value. Given the serious nature of the offense that he pled guilty to, I'm just not certain that necessarily the factors and mitigation would be as effective given the weight of the seriousness of the offense in this matter. Okay. Thank you. Okay. I'm sorry. I apologize. May I have a moment? Yes. Okay. Regarding defendant's second point, defendant suggests the other grounds for withdrawing his plea was that counsel failed to advise him of the collateral consequence that he could challenge his plea on appeal. Defendant acknowledges that generally, counsel does not have a duty to advise defendants of collateral consequences. He then points out in his brief, I believe on page 21, that sometimes affirmative or misadvice to collateral consequences can be grounds for ineffective assistance of counsel deficient performance. However, what we have here is not misadvice. We have the failure to advise, which is not, in the case of collateral consequences, grounds for which to find ineffective assistance of counsel. Defendant had multiple opportunities on the record to express that he was formally misadvised of his ability to challenge his sentence on appeal. He did not do that based on my reading of the record. In his initial motion to withdraw plea that he filed immediately after entering the plea, he doesn't say that counsel, excuse me, affirmably misadvised him. He says that he, quote, wasn't explained what an open plea was in his testimony following the remand. But if the reference by everybody was that it's an open plea, I guess that's misadvice, isn't it? That that's an inaccurate assessment of what this plea was. I wouldn't say, I would say that he... He may or may not have understood what that meant as to the collateral consequences, but that's inaccurate. Yes, it was inaccurate, but he has to be advised at the time that it was... Or he has to be given that misadvice at the time, affirmatively in response to questioning, I believe is the threshold for affirmative misadvice. He has to ask about it and be told incorrectly. Well, this isn't the attorney, but the judge did tell him that he had to file a motion to imply to him that he has the opportunity to seek to reduce the sentence. Yes, I believe that would be the implication. And part of the problem here is if you looked at individual statements, it may not be as concerning as looking at the whole picture. And he's told by the judge, you know, he's already pleaded at that point, but he's told by the judge that you can file a motion to reconsider the sentence within 30 days. It would seem to suggest that there's no bar to that being done. I would have to agree that that's what it suggests. States. Yes. But in any event, defendant still has to show that it would have been rational for him to go to trial, even if there was deficient advice. And given the circumstances of this case, the state does not believe that that is the case. Once again, defendant admitted to police investigators that he, quote, whooped his two month old baby multiple times on the day of its death. The baby suffered a fractured skull, which is consistent with beating the child in the head. As I said earlier, the trial judge remarked that he was surprised that he could only, that 60 years was the maximum sentence that he could give out. So given all that, it just is not really rational that he would reject this plea. The plea did ensure the possibility that he could get out of jail, potentially. And that is not, defendant attempts to sort of like flatten that, but that isn't nothing like that is some value there, I think. So, excuse me, I apologize. So the state would ask that this court does not overturn the previous decision of the trial court and allow defendant to withdraw his plea. Regarding the 604D issue, defendant asserts that there was a 604D issue because his trial counsel did not attach affidavits to support outside the record claims of a jailhouse phone call between Ms. Johnson and defendant. The state acknowledges that remand counsel had the phone calls and quoted them in his motion. He just, for whatever reason, I don't want to speculate on his work, but he did not attach the affidavits to his motion. Nonetheless, it's the state's position that the failure to attach these affidavits is a technical rather than a substantial, excuse me, substantive defect per the court's most recent decision inclined, and that another remand on 604D is not required. If your honors do not have any more questions for the state, the state will stand on its brief. Mr. Gatton, on that very issue, the allegations, as you noted, were in the petition regarding Ms. Johnson's statement and the jail phone calls. Isn't that enough to suggest that remand counsel thought these claims had merit and that with the strict compliance requirements of 604, an affidavit would be required? I don't think an affidavit is required in this case because defendant was able to testify to those claims, so he was able to present sort of the gist of his claims and develop those claims at a free and fair hearing, which is what is required per my reading of Klein, but I may be incorrect and I apologize if that is the case. All right. Well, Mr. Gatton, thank you. Mr. Scanlon, you have time for rebuttal. Thank you, your honor. I'd just like to address a couple of items that the state brought up. First of all, the state's argument that counsel didn't have a duty to advise Mr. Cutler regarding the appeal consequences of his plea. Regardless of whether they are considered the kind of direct and kind of direct consequences of which courts are required to admonish under Rule 402, this was nonetheless, the appeal consequences of the plea were nonetheless a automatic consequence of his acceptance of the plea. It was something that happened by operation of law, and whether or not the court under Rule 402 was required to admonish him of that consequence, counsel absolutely had a duty to inform Mr. Cutler that by doing this, he would no longer have the ability to challenge his sentence. He would have to accept any sentence that resulted as a result of the plea. What's your best case authority for that proposition? I think Padilla v. Kentucky is the best case authority because this situation very closely maps the idea that in Padilla deportation was this direct and ultimately automatic consequence of the defendant's plea of guilty in that case. Because of that, counsel had a duty to properly advise the client about that as a direct and automatic consequence. This is even more clearly a direct and automatic consequence, one that doesn't require any background that such as might be required in a case where a client might be subject to deportation. Here, all clients, everyone is facing this exact automatic consequence as a result of a negotiated plea. Counsel has a duty to provide advice on that and to make sure that the client is aware of that Yeah, I was just thinking, Mr. Scanlon, I can't believe that if that is the duty that we haven't found it already. That there's no case that speaks directly to something that's inherent in a plea of this nature. I apologize, Your Honor. I think generally speaking, the true extremity of this case is the fact that this was not identified in some way by any of the a partially negotiated plea. There may be some confusion at times, but that no attorney throughout the course from the acceptance of the plea until the sentencing and beyond, that no attorney identified the fact that this was actually a negotiated plea and he was barred from challenging his sentence speaks to how rare it is that I think an attorney would not be able to do that and thus how rare it might be that a counsel violates that duty. But in this case, under the circumstances that are clear on this record, no attorney that was in the courtroom identified the fact that Mr. Cutler could not challenge his sentence once he had accepted this plea. Right, but let's say they had called it a partially negotiated plea. Would they have a duty to advise him of the consequences of a partially negotiated plea? Yes, Your Honor. They happen every day and there's no authority for that proposition that you can cite me to? Besides Padilla in a different context? Not directly, no, Your Honor. Again, there's another context I believe. I can't remember the case name, but it is in my brief where they considered the possibility of the duty to advise the client of sex offender registration that that might be a duty that counsel was required to perform. But again, I don't have a specific case saying that this in particular is that duty. But again, under the structure, even of Del Villar, this is still a direct and automatic consequence of the plea deriving from the acceptance of that plea. And moving off of that and going into prejudice, as Your Honor, Justice Doherty, I believe, pointed out that looking at the whole picture is what is required in determining that prejudice. In determining whether or not it was rational, we must look at the entire picture of what happened down below. And here is very clear from the record that Mr. Cutler did not wish to plead guilty, that he walked into the... I see that no, my time is up. So I simply ask this court to allow Mr. Cutler to withdraw his plea. Thank you. All right. Thank you, counsel. Thank you both. The matter will be taken under advisement and a written decision will be issued. The court stands in recess.